IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIRECTV, Inc.

        Plaintiff,

v.

ZANE MOORE,

        Defendant.

No. 04-3798 SBA

**ORDER**

This matter comes before the Court on Plaintiff DIRECTV, Inc.'s ("DIRECTV") Motion for Default Judgment and damages against Defendant Zane Moore ("Defendant") and request for Attorneys' Fees and Costs. Having read and considered the arguments presented, the Court finds this matter appropriate for disposition without a hearing. The Court HEREBY GRANTS Plaintiff's Motion for Default Judgment and awards Plaintiff damages of $20,000. Furthermore, the Court GRANTS Plaintiff's request for costs and orders Plaintiff to provide supplemental briefing on its request for attorneys' fees.

**BACKGROUND**

On September 9, 2004, Plaintiff DIRECTV filed a Complaint alleging that Defendant Moore purchased and used one or more Pirate Access Devices which allowed him to view DIRECTV's television programming without authorization by or payment to DIRECTV. On October 28, 2004, Defendant was properly served with a copy of the Summons and DIRECTV's Complaint, and has since failed to appear or otherwise defend in this action. (Declaration of Sandeep J. Shah in Support of Motion for Default Judgment ("Shah Decl.," ¶ 3.) On December 14, 2004, the Clerk of the Court entered default against Defendant. [Docket No. 9.] The instant Amended Motion for Default Judgment was filed on February 17,

2005 and served on Defendant.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), judgment by default may be entered by the court; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian. No party in default is entitled to notice under Rule 55 unless he has "appeared" in the action. *See Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 368 (9th Cir. 1977). If the party against whom default is sought has "appeared" in the action, the party must be served with written notice of the application for judgment at least three days prior to the hearing. "Normally, an appearance in an action involves some presentation or submission to the court. But because judgments by default are disfavored, a court usually will try to find that there has been an appearance by defendant." *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (internal quotation marks and citations omitted). Thus, a defendant who has not formally appeared, for example by filing a responsive pleading, may be deemed to have appeared for purposes of Fed. R. Civ. P. 55 if the defendant clearly manifested an intention to defend the action. *Id.*; s*ee Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) ("The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit"). The court may conduct such hearing as it deems necessary and proper to enable it to enter judgment or to determine the amount of damages.

The decision of whether to grant or deny a request for default judgment lies within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming denial of motion for default judgment and *sua sponte* dismissal of plaintiff's claims). In exercising its discretion, the district court is guided by consideration of the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (affirming denial of motion for default judgment where district court had serious reservations concerning the substantive merit of the claims, a large amount

2

of damages were at issue, and there was a factual dispute with regard to the matters alleged in the pleadings).

A formal hearing on a default judgment motion is not required. *See United States v. DeFrantz*, 708 F.2d 310, 312–13 (7th Cir. 1983) (finding that district court did not err in refusing to hold a hearing where the motion for default judgment indicated the amount of damages sought). Moreover, the Court may adjudicate a motion for default judgment based on the affidavits submitted by the parties. *See e.g., Transportes Aereos De Angola v. Jet Traders Inv. Corp.*, 624 F. Supp. 264 (D. Del. 1985). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount [] of damages, will be taken as true." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987) (citing *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

## DISCUSSION

### A. Procedural Requirements

In the instant case, Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(a). Pursuant to Fed. R. Civ. P. 55(a), the Court Clerk properly entered default against Defendant for failure to respond to the Complaint. ([Docket No. 9]; *see also* Shah Decl., ¶ 4.) Defendant is neither an infant nor an incompetent person. (*Id.* at ¶ 8.) Defendant is not on active military duty. (*Id.,* ¶ 8 & Exh. D.) Defendant has been served with Plaintiff's Amended Motion for Default Judgment.

### B. Allegations of the Complaint

Plaintiff's first claim for relief alleges that Defendant received and/or assisted others in receiving unauthorized satellite signals in violation of 47 U.S.C. § 605(a); Plaintiff's second claim asserts that Defendant received unauthorized electronic communications by using the Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2520(a); Plaintiff's third claim alleges that Defendant knowingly manufactured, assembled, sold, distributed, or modified an electronic device, knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite programing in violation of 47 U.S.C. § 605(e)(4); Plaintiff's fourth claim seeks damages for conversion to his own use and benefit property belonging to DIRECTV.

(Compl., ¶¶ 13-28.)

Plaintiff seeks default judgment against Defendant in the amount of $20,000. Plaintiff seeks this relief for violation of 47 U.S.C. § 605(e)(4), or alternatively, for violation of 18 U.S.C. § 2520(a), or, alternatively, for violation of 47 U.S.C. § 605(a).

### 1. 47 U.S.C. § 605(e)(4)

47 U.S.C. § 605(e)(4) is meant to target upstream manufacturers and/or distributors of illegal pirating devices. *See DirecTV Inc. v. Albright*, 2003 U.S. Dist. LEXIS 23811, *7 (E.D. Pa. 2003); *DirecTV, Inc. v. Borich*, 2004 U.S. Dist. LEXIS 18899, at *8-9 (S.D.W.Va. 2004); *see also DirecTV, Inc. v. McDougall*, 2004 U.S. Dist. LEXIS 23013, at *9 (W.D.Tex. 2004) (where the court found that DirecTV alleged a proper violation of § 605(e)(4) because of the alleged sale or distribution of pirate access devices). Section 47 U.S.C. § 605(e)(4) states:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a), shall be fined not more than $ 500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

47 U.S.C. § 605(e)(4). "Three elements must be shown to establish that defendant violated § 605(e)(4): (1) defendant distributed or sold equipment, (2) the equipment was primarily of assistance in decrypting satellite signals, such as Directv's, without permission, and (3) defendant knew or had reason to know that the equipment primarily aided the unauthorized use of such signals." *Directv Inc. v. Little*, 2004 U.S. Dist. LEXIS 16350, *17 (N.D. Cal., 2004) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (9th Cir. 1996); *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381,385-386 (9th Cir. 1995)).

Plaintiff asserts that on or about December 8, 2001, Defendant purchased a "Pirate Access Device, consisting of a printed circuit board device called an "'unlooper'" from a company called TestSat. (Compl., ¶ 12(a).) Plaintiff asserts that on or about January 17, 2002, Defendant purchased a "Pirate Access Device called a 'WS ISO Programmer' which consisted of a programmer primarily designed to

4

illegally modify DIRECTV Access Cards, from TestSat." (*Id*., ¶ 12(b).) Plaintiff asserts a violation of 47 U.S.C. § 605(e)(4) based upon these and the following allegations:

> Upon information and belief, Defendant actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV programming. Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendant engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of satellite programming.

(*Id*., ¶ 22.) The Court takes Plaintiff's factual allegations as true. *Geddes*, 559 F.2d at 560. However, "[t]here must be a sufficient basis in the pleadings for the judgment entered. . . . [t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Plaintiff alleges that the Pirate Access Devices purchased by Defendant were: (1) an "unlooper" and (2) a "WS ISO Programmer." (Compl., ¶ 12.) An "unlooper" is used to restore functionality to illegally modified DIRECTV access cards, while a "WS ISO Programmer" is used to write code to valid DIRECTV Access Cards to obtain access to DIRECTV's satellite programming without payment. (Declaration of Jaime Sichler ("Sichler Decl.") ¶¶ 4-5.) Plaintiff asserts that a § 605(e)(4) violation occurred "by inserting Pirate Access Devices and/or inserting illegally programmed Access Cards" into valid DIRECTV Receivers. (Compl. at ¶ 22.) Plaintiff apparently asserts that this "modification" of "Access Cards" entitles it to default judgment under § 605(e)(4) even if he did not engage in the distribution or sale of these devices. (*See id.*)

However, as stated in one of the cases *Plaintiff* cites in support of its position, courts that have addressed whether the purchase and use of pirate access devices constitutes a violation of § 605(e)(4) in the context of a motion for default judgment have found that it does not:

> Courts that have addressed the issue have concluded that mere purchasing and use of pirate access devices does not constitute a violation of section 605(e)(4). *See DIRECTV, Inc. v. Albright*, No. 03-4603, 2003 WL 22956416 at * 7 (E.D.Pa. Dec. 9, 2003) (section 605(e)(4) "targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices."); *See also DIRECTV, Inc. v. Borich*, No. Civ. A. 1:03-2146, 2004 WL 2359414 (S.D.W.Va. Sept. 17, 2004) ("the court does not find that the act of 'removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers' is the type of assembly or modification prohibited by the statute.... Borich's act of installing and activating the pirate access device does not convert him into the type of manufacturer or distributor of these devices contemplated by Section 605(e)(4)").

5

*DirecTV, Inc. v. McDougall*, 2004 U.S. Dist. LEXIS 23013, at *9.  In *McDougall*, the defendant had purchased eight Pirate Access Devices and Plaintiff had specifically alleged that Defendant had engaged in an enterprise to sell and/or distribute the Devices.  *Id*. at *3.  Here, there are no factual allegations asserting that Defendant sold or distributed the Pirate Access Devices.[1]  In addition, Plaintiff does not allege that Defendant purchased the same two Pirate Access Devices, which might suggest that one was for sale; instead, Plaintiff alleges that Defendant purchased two apparently complementary devices, suggesting that they were for use by one person.  Because Plaintiff has not alleged that Defendant was involved in the sale or distribution of the Pirate Access Devices, the Court finds that Plaintiff has failed to sufficiently demonstrate the merits of this claim.  *Eitel*, 782 F.2d at 1471–72.  The Court therefore declines to grant default judgment pursuant to 47 U.S.C. § 605(e)(4).

### 2. 18 U.S.C. § 2520(a)

In the alternative, Defendant seeks default judgment under 18 U.S.C. § 2520(a), which states:

> Except as provided in section 2511(2)(a)(ii) [18 USCS § 2511(2)(a)(ii)], any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter [18 USCS §§ 2510 et seq.] may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

The Ninth Circuit has held that the plain language of the Electronic Communications Privacy Act (ECPA) 18 U.S.C. §§ 2510-2521, applies to the piracy of satellite television.  *United States v. Lande*, 968 F.2d 907, 908 (9th Cir. 1992).  Here, Plaintiff has alleged that Defendant purchased the Pirate Access Devices from a company called TestSat. (Compl. at ¶ 3.)  Plaintiff obtained TestSat's records, which indicated that Defendant had purchased the Pirate Access Devices.  (*Id.* at ¶ 4.)[2]  Plaintiff alleges that Defendant used these Pirate Access Devices to decrypt and view DIRECTV's satellite television transmissions, and that this

---

[1] Plaintiff does assert, in conclusory fashion, that "[u]pon information and belief, Defendant knowingly manufactured, assembled, sold, distributed, or modified an electronic, mechanical, or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite programming, or direct-to-home services, or is intended for any other prohibited activity." (Compl. at ¶ 25.)  However, merely mimicking the language of the statute is not a factual allegation. (Compare 47 U.S.C. § 605(e)(4).)

[2] Plaintiff also asserts that Defendant purchased DIRECTV satellite equipment on January 18, 1997, demonstrating that, in conjunction with the Pirate Access Devices, Defendant had the capability of accessing all of Plaintiff's programming. (Sichler Decl., ¶ 7.)

6

activity has harmed DIRECTV by depriving it of subscription and pay-per-view revenues. (*Id.* at ¶ 18.) Moreover, Plaintiff has alleged that it is a "person" pursuant to the statute. (*Id.*)[3] Accordingly, the Court finds that default judgment is appropriate under § 2520(a), and that Plaintiff is entitled to damages according to proof.

Damages under 18 U.S.C. § 2520(a) are governed by 18 U.S.C. § 2520(c)(2), which provides that the Court may assess damages of whichever is the greater of:

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $ 100 a day for each day of violation or $10,000

The Court has discretion to award damages under § 2520(c)(2). *Dorris v. Absher*, 179 F.3d 420, 428-430 (6th Cir. 1999). "Factors that may be considered include whether the plaintiff suffered financial harm, the extent to which a violation occurred and unlawfully intercepted signals were disclosed, whether the defendant had a legitimate reason for his or her actions, whether the defendant profited from his or her acts, and whether an award of damages would serve a legitimate purpose." *Directv, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790 (D. Mich., 2004).

First, in assessing § 2520(c)(2) damages, "the court should determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any." *Dorris*, 179 F.3d at 430. Plaintiff has calculated the value of programming purchased by the typical DIRECTV high-end legitimate customer (top 10% of subscribers to DIRECTV for the year 2003) at $229.08 per month, or $7.53 per day. (Sichler Decl., ¶¶ 18-19.) Plaintiff then asserts that Defendant, who purchased two Pirate Access Devices to illegally obtain DIRECTV programming, would likely use at least as much as a typical high end user because he would have paid a substantial sum for the devices and would be able to access all of DIRECTV's proprietary programming, including pay-per-view movies, sporting events, and adult programming. (*Id.* ¶ 17.) Thus, pursuant to the allegations in the Complaint, now taken as true, Defendant purchased the first Pirate Access Device on December 8, 2001, and used it until April 30, 2004 (874

---

[3] Pursuant to 18 U.S.C. § 2510(6): "'person' means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."

days).[4]  The damages suffered by Plaintiff amount to a daily charge of $7.53 multiplied by 874 days, for a damage total of $6,581.22. (Motion, 18.)  Plaintiff also asserts that it expends substantial resources associated with investigating and preventing piracy, but provides no specific damages calculation for these activities. (Sichler Decl., ¶¶ 9-16.)

"The court should next ascertain the number of days that the statute was violated, and multiply by $100." *Dorris*, 179 F.3d at 430; 18 U.S.C. § 2520(c)(e)(B).  Multiplying $100 by 874 would equal $87,400.  "The Court should then tentatively award the plaintiff the greater of the above two amounts (actual or statutory damages) unless each is less than $10,000, in which case the $10,000 award is presumed." *Dorris*, 179 F.3d at 430.  DIRECTV claims $6,581.22 in actual damages, while the statutory damages of $100 per day total $87,400.  However, DIRECTV limits its request for statutory damages to $20,000.  (Compl. at p. 7.)[5]

"Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it." *Dorris*, 179 F.3d at 430.  Here, Plaintiff has demonstrated the appropriateness of an award of damages.  Defendant has admitted, through default, that it intercepted DIRECTV's satellite programming and harmed DIRECTV through the loss of revenue it would otherwise have received.  Furthermore, DIRECTV has provided evidence that Defendant joined web-sites and usenet groups that provide information related to piracy. (Sichler Decl., ¶ 24.)  In addition, there is no evidence that there is any legally permissible use for the Pirate Access Devices.  Thus, an award of damages would serve the purposes of compensating DIRECTV and deterring future violations.  Accordingly, the Court grants DIRECTV's request for damages in the amount of $20,000.[6]

### C.    Attorneys' Fees

---

[4] Plaintiff asserts that in or about April 2004, the data stream used by DIRECTV was changed such that the Pirate Access Device used by Defendant would no longer be operational. (Motion at 9, fn. 5.)

[5] In the Complaint, Plaintiff requests statutory damages in the amount of $10,000 per Pirate Access Device, for a total award of $20,000.  Because mere possession of multiple devices does not establish the commission of multiple violations of 18 U.S.C. § 2511(a), on this record Plaintiff is not entitled to $10,000 per Pirate Access Device possessed by Defendant. *See DirecTV, Inc. v. Bloniarz*, 336 F.Supp.2d 723, 727 (W.D. Mich. 2004).  Nevertheless, the Court construes Plaintiff's damages request as one limiting the presumed award of $87,400, to which it is entitled under § 2520(c)(2)(B), to $20,000.

[6] Because the Court finds that Plaintiff is entitled to its requested relief pursuant to 18 U.S.C. § 2520(a), the Court does not reach Plaintiff's alternative request pursuant to 47 U.S.C. § 605(a).

8

1  DIRECTV is entitled to reasonable attorneys' fees and costs incurred in prosecuting its claims for
2  violation of 18 U.S.C. § 2520(a). 18 U.S.C. § 2520(b)(3); Fed. R. Civ. P. 54. DIRECTV requests
3  $2,915.50 incurred in prosecuting its claims. (Motion at 20.) The party requesting fees "bears the burden
4  of documenting the appropriate hours expended in the litigation and must submit evidence in support of
5  those hours worked." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994).

6  Plaintiff has provided invoices for the amounts spent on the instant action. (Shah Decl., Exh. E.)
7  Plaintiff asserts that $1,295.50 was spent prior to preparation of the instant Motion for Default Judgment.
8  (*Id.* at ¶ 10.) Prior to the filing of the instant motion, 6.7 hours total was spent on, *inter alia*, reviewing and
9  analyzing the evidence against Defendant, preparation of the Complaint, preparation of the certification of
10 interested parties, and review of the Court's standing orders, the ADR Scheduling Order, the Court's
11 Order setting the case management conference, and notices regarding filing of the summons. Although this
12 hourly total is reasonable for completion of these tasks, Plaintiff has not described the relevant experience
13 meriting the billing rates of the individuals who worked on this action. The only attorney whose experience
14 Plaintiff provides is that of Sandeep Shah, who is a 2000 graduate of McGeorge Law School. (*Id*. at ¶ 8.)
15 Mr. Shah states that he has been continuously practicing in commercial and business litigation since his
16 graduation, and that his billing rate is $255.00 per hour. (*Id*.) While this is reasonable, of the $1,295.50
17 referenced above, it appears that Mr. Shah only billed a total of 0.5 hours, or $122.50. Kelli Osaki
18 ($300/hour), Jack R. Scharringhausen ($235/hour), Kristine L. Collins ($135/hour), Michael Westman
19 ($140/hour), Julie Bentley ($150/hour) and Marci L. Knigthen ($125/hour) billed the remainder of the time
20 to this case, but their level of experience is not provided. (*Id*. at Exh. E.) Accordingly, while the overall
21 number of hours is reasonable, the Court does not have sufficient information to determine whether the
22 requested amount of fees is reasonable.

23 In addition, Plaintiff asserts that it has spent $855 in preparation of the instant motion. Mr. Shah
24 asserts that Kristine L. Collins spent 3.5 hours at $135/hour preparing the instant motion, while Mr. Shah
25 spent 1.5 hours reviewing and revising the motion. The time spent is reasonable, and Mr. Shah's billing rate
26 is reasonable based on his experience. However, as stated *supra*, Ms. Collins' billing rate has not been
27 justified.

28 Accordingly, Plaintiff is granted leave to submit evidence supporting the billing rates for the

(left margin: **United States District Court** For the Northern District of California)

attorneys listed above.[7]  Plaintiff may not, however, request any additional fees for the preparation of such evidence because Plaintiff should have provided such information with its original request for fees.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Default Judgment is GRANTED pursuant to 18 U.S.C. § 2520(a), and Plaintiff is awarded damages of $20,000. The Court also finds that Plaintiff is entitled to costs, and Plaintiff is directed to file a Bill of Costs in compliance with the Local Rules of this Court.

IT IS FURTHER ORDERED THAT Plaintiff must file, within 15 days of this Order, supplemental briefing providing evidence in support of the billing rates for the attorneys discussed above.

IT IS SO ORDERED.

Dated: 5-12-05

     /s/ Saundra Brown Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[7] Plaintiff also asserts that it expects to incur approximately $765.00 in attorneys' fees in connection with a hearing on this motion because it anticipates that the hearing will take three hours. (*Id.* at ¶ 12.) Because no hearing was held, the Court declines to award such fees.